UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALEJO JUAREZ RUIZ (A# 072-985-450),

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-01700 DJC SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the reasons provided below, the undersigned finds that Petitioner's ongoing detention violates substantive due process and recommends Petitioner be immediately released from detention on conditions of supervision.

**FACTUAL AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of Mexico currently detained at the California City Immigration Detention Facility, within this judicial district. ECF No. 1 at 2. The date and circumstances of Petitioner's initial entrance into the U.S. are not in the record. On May 4, 1993, Petitioner was convicted of selling/transporting heroin under Cal. Health & Safety Code § 11352(a) and sentenced to four years in prison. ECF No. 7-2 at 2. Following Petitioner's prison sentence, an immigration judge ("IJ") ordered him removed on February 23, 1995. ECF No. 7-3

at 21. Petitioner was deported to Mexico on March 20, 1995. ECF No. 7-1 at 3.

The record is unclear as to the dates and circumstances of Petitioner's subsequent entries into the United States. On December 28, 1998, Petitioner was arrested in the U.S. for driving under the influence ("DUI") and served twelve days in jail. ECF No. 7-1 at 3. On February 4, 2002 and March 24, 2002, immigration officials again apprehended Petitioner, who identified himself under a false name. Id. On each occasion, the record indicates that immigration officials reinstated Petitioner's order of removal after initially granting voluntary return. Id. On June 26, 2002, Petitioner pled guilty to one count of false statement to a federal officer under 18 U.S.C. § 1001 and was sentenced to six months in federal prison. ECF No. 7-2 at 6-8.

On March 12, 2024, immigration officials arrested Petitioner pursuant to his reinstated order of removal under 8 U.S.C. § 1182(a)(9)(A)(ii). ECF No. 7-1 at 2-3. Petitioner claimed a fear of return to Mexico and was referred to an asylum officer for a reasonable fear interview. Id. Petitioner participated in the interview with counsel on April 9, 2024. ECF No. 7-3. At the conclusion of the interview, the asylum officer made a positive reasonable fear determination and referred the matter to an IJ for withholding-only proceedings. Petitioner received a bond hearing on September 12, 2024, pursuant to Aleman Gonzalez v. Sessions, 325 F.R.D. 616, 629 (N.D. Cal. 2018), in which the IJ determined that the government had established by clear and convincing evidence that Petitioner constituted both a danger to the community and a flight risk. ECF No. 11-1. On September 24, 2024, an IJ denied Petitioner's application for withholding of removal and deferral of removal under the INA and the U.N. Convention Against Torture ("CAT"). ECF No. 7-5. The BIA affirmed the IJ's decision on January 15, 2025. ECF No. 7-6. On January 29, 2025, Petitioner filed a petition for review of the BIA decision with the Ninth Circuit Court of Appeals along with a motion for stay of his removal. See Docket, Juarez Ruiz v. Bondi, Case No. 25-574 (9th Cir. 2026).[1] The Ninth Circuit issued a temporary stay of removal pursuant to General Order 6.4(c). ECF No. 2. Petitioner remains detained pending judicial

---

[1] The undersigned takes judicial notice of the Ninth Circuit docket, Juarez Ruiz v. Bondi, Case No. 25-574 (9th Cir.). See Fed. R. Evid. 201(b)-(c); Harris v. County of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012) (a court may take judicial notice of undisputed matters of public record including documents on file in federal or state courts).

review of the denial of his requests for withholding and deferral of removal.

Petitioner filed the instant § 2241 habeas petition on March 2, 2026, challenging his ongoing, prolonged detention under the Due Process Clause of the Fifth Amendment. ECF No. 1. Petitioner argues that the removal period began on the date of his arrest, March 12, 2024, and that he is currently subject to discretionary detention under 8 U.S.C. § 1231(a)(6).[2] Attached to the petition are statements of support from Petitioner's minor daughter and staff from her school. Id. at 23-25. By way of relief, Petitioner seeks immediate release or, in the alternative, a bond hearing where, to continue detention, the government must establish by clear and convincing evidence that he presents a risk of danger or flight. Id. at 19-20.

Respondents oppose the petition and argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1231(a) because the removal period has yet to begin. ECF No. 7. Citing Johnson v. Guzman-Chavez, 594 U.S. 523, 529 (2021) ("Guzman-Chavez"), Respondents argue that Petitioner's due process challenge is foreclosed by the judicial stay in the Ninth Circuit: "[T]he judicial stay of removal means he has not entered the post-removal period let alone the presumptively reasonable six-month post-removal period discussed in Zadyvdas." Id. at 5. Respondents further argue that Petitioner already received a bond hearing on September 12, 2024, and did not appeal the IJ's denial of release on bond. Id. Petitioner filed a reply in which he claims his diabetes and heart condition are worsening in detention and alleges medical neglect by California City administrators. ECF No. 9.

**DISCUSSION**

## I. Applicable Detention Statute

### A. Section 1231 Governs Petitioner's Detention During the Stay of Removal.

The statutory framework governing immigration detention is complex. "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the

[2] Parts of the form petition refer to § 1226(c) as the statutory basis for detention. See, e.g., ECF No. 1 at 5-6, ¶¶ 21-23. However, the factual sections of the petition unambiguously assert that the removal period began on March 12, 2024, the date of Petitioner's arrest, and that Petitioner is detained under § 1231(a)(6). See id. at 6-8.

necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

Respondents argue Petitioner's detention is mandatory and governed by 8 U.S.C. § 1231(a), specifically subsections (a)(1)(A)–(B), (a)(2), and (a)(5). ECF No. 7 at 4. The petition is somewhat inconsistent due to its template, but the factual section specific to Petitioner asserts he is in post-removal-period detention under 8 U.S.C. § 1231(a)(6). ECF No. 1 at 6-8.

Section 1231(a) of the United States Code governs the detention of noncitizens after a final order of removal has been issued. Detention is mandatory during the 90-day "removal period" following the entry of a final order of removal. See 8 U.S.C. § 1231(a)(1)-(2). "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and [the Ninth Circuit Court of Appeals] stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (quoting 8 U.S.C. § 1231(a)(1)(B)(i)-(iii)).

Detention after the expiration of the removal period is governed by 8 U.S.C. § 1231(a)(6). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90-day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [DHS] determines 'to be a risk to the community'; and (4) those [DHS] determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.SC. § 1231(a)(6)).

This action concerns the reinstatement of an order of removal pursuant to § 1231(a)(5), which reads:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

"[A] reinstated removal order is administratively final." Padilla-Ramirez v. Bible, 882 F.3d 826,

831 (9th Cir. 2017) (citing 8 U.S.C. § 1231(a)(5)); see also Guzman-Chavez, 594 U.S. at 534 (same).

Respondents rely on Guzman-Chavez, where the Supreme Court held that § 1231 governs the detention of noncitizens like Petitioner who were "removed from the United States but later reentered without authorization, were subject to reinstated orders of removal, and then sought withholding of removal based on fear of persecution in the particular countries designated by their removal orders." 594 U.S. at 526. The Supreme Court explained the specific process for seeking withholding of removal after a reinstated order of removal that petitioner pursued here:

> The process for applying for withholding of removal depends on whether the alien is subject to the standard removal proceedings or a reinstated order of removal. . . . "[B]ecause an alien subject to a reinstated order of removal will not have any removal proceedings, the process begins for him only if he expresses a fear to DHS of returning to the country of removal. See [8 C.F.R.] §§ 208.31(a), 1208.31(a). At that point, DHS will refer him to an asylum officer for a reasonable fear determination, which will normally be conducted within 10 days of the referral. §§ 208.31(b), 1208.31(b). If the asylum officer concludes that the alien has a reasonable fear, he will refer the matter to an immigration judge for initiation of withholding-only proceedings. §§ 208.31(e), 1208.31(e). Those proceedings are "limited to a determination of whether the alien is eligible for withholding or deferral of removal," and as such, "all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief." §§ 208.2(c)(3)(i), 1208.2(c)(3)(i). The immigration judge's final decision as to withholding can be appealed to the BIA. §§ 208.31(e), 1208.31(e).

Guzman-Chavez, 594 U.S. at 531. Thus, the undersigned agrees with respondents that § 1231 governed Petitioner's detention as he navigated the administrative appeals process for his applications for withholding of removal and CAT.

Guzman-Chavez did not address whether § 1231 continues to govern reinstatement of removal proceedings after a judicial stay of removal. But the undersigned concludes that its holding logically extends to such circumstances given that the stay of removal does not affect the finality of the removal order. For instance, under Ninth Circuit precedent, a stay of removal pending direct review of a removal order shifts a petitioner's detention from § 1231 to § 1226. See Prieto-Romero, 534 F.3d at 1059 (emphasizing that § 1231(a)(1)(B) "makes clear that when a court of appeals issues a stay of removal pending its decision on a[ ] [non-citizen]'s petition for review of his removal order, the removal period begins only after the court denies the petition and

withdraws the stay of removal"). But in reinstatement of removal proceedings, the removal order is generally outside of the scope of judicial review altogether. "[Section] 1231(a)(5) explicitly prohibits [noncitizens] from seeking review or relief from the order after it is reinstated following unlawful reentry." Guzman-Chavez, 594 U.S. at 534; see also Escobar v. Bondi, No. 3:26-cv-0197 RBM MSB, 2026 WL 473046, at *2 (S.D. Cal. Feb. 19, 2026) (holding that § 1231 applied despite stay of removal where "[p]etitioner's pending appeal with the Ninth Circuit concerns his request for withholding of removal, not his underlying removal order"). Indeed, Petitioner's petition for review does not challenge his reinstated order of removal, but rather challenges the denial of withholding and deferral of removal. Accordingly, the undersigned finds that Petitioner's detention continues to be governed by § 1231.

### B. Petitioner's Detention is Specifically Governed By § 1231(a)(6).

Respondents' claim that Petitioner "has not entered the 'post-removal period' because his removal is stayed," ECF No. 7 at 4, misinterprets § 1231(a)(1)(B)(ii). Under that provision, "[i]f the removal order is judicially reviewed ***and*** if a court orders a stay of the removal of the alien," the removal period begins on "the date of the court's final order." 8 U.S.C. § 1231(a)(1)(B)(ii) (emphasis added). Here, the first requirement of § 1231(a)(1)(B)(ii) is not met because Petitioner's applications for withholding of removal and CAT, not his underlying removal order, are under judicial review. "The beginning of the removal period is not delayed by *every* judicially entered stay, because the exclusive means for judicial review of a removal order is a petition for review filed with the appropriate court of appeals. . . . [T]he entry of a stay of removal for any other reason . . . does not prevent the removal period from beginning." Prieto-Romero, 534 F.3d at 1060 n.6 (citations omitted) (emphasis in original).

Instead, the undersigned agrees with Petitioner that the removal period began on March 12, 2024, the day Petitioner's removal order was reinstated and became administratively final. See 8 U.S.C. § 1231(a)(1)(B)(i); Guzman-Chavez, 594 U.S. at 533-35. As Petitioner's order of removal has "long been 'administratively final,'" Guzman-Chavez, 594 U.S. at 535, the undersigned finds that the 90-day removal period has lapsed and petitioner "is therefore in the

'post-removal period' under § 1231(a)(6), which does not mandate detention."[3] Arzate v. Andrews, No. 1:25-cv-0942 KES SKO (HC), 2025 WL 2411010, at *3 (E.D. Cal. Aug. 20, 2025) (rejecting government's argument that petitioner was subject to mandatory detention under § 1231(a)(2)(A) where petitioner's removal order was reinstated two-and-a-half years earlier) (citations omitted). Therefore, "[b]ecause § 1231(a)(6) permits, but does not require, detention," id., the undersigned rejects Respondents' main contention that Petitioner's detention is "both mandatory and authorized under 8 U.S.C. § 1231 §§ 1231(a)(1)(A)–(B), (2), (a)(5)." ECF No. 7 at 4. Having determined that Petitioner's current detention is governed by 8 U.S.C. § 1231(a)(6), the undersigned proceeds to the due process analysis.

**II. Substantive Due Process Analysis**

In Count 4, Petitioner argues that his detention—which has now lasted nearly two-and-a-half years—violates due process because it serves no legitimate nonpunitive government interest sufficient to justify its constitutional costs. ECF No. 16 at 10. Respondents do not meaningfully address the substantive due process claim.

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. U.S. Imm. and Customs Enforcement, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (citing Zadvydas, 533 U.S. at 690-91); see also Larios v. Wofford, No. 1:26-

[3] The application of § 1231(a)(6) here also tracks petitioner's allegation that he was denied release under 8 C.F.R.§ 241.4, a regulation that expressly concerns the government's discretionary authority for continuing to detain noncitizens "beyond the removal period."

cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

Several judges, including judges of this Court, Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. 2025), have adopted the following five-factor balancing test developed by Judge Pitts of the Northern District of California: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II"). Applying these Doe v. Becerra II factors,[4] the undersigned concludes that Petitioner's current detention violates substantive due process.

**A. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I") (internal citation omitted).

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at

[4] The undersigned acknowledges that the petitioners in Doe v. Becerra II and Doe v. Chestnut were subject to detention under 8 U.S.C. § 1226(c), whereas here the detention authority is § 1231(a)(6). However, the statutes are analogous in their bond and release procedures.

708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's detention has exceeded 28 months, which is significantly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent"). The pending petition for review of the denial of withholding of removal further suggests that Petitioner faces an undetermined and potentially significant period of additional detention. See Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025) (noting due process concerns where a noncitizen "face[d] an undetermined, but likely significant, period of mandatory detention through the appeals process"). If Petitioner prevails on his petition for review and his applications for relief are remanded to the BIA or IJ, he could face years of additional detention. But while prolonged, the over two-year duration of Petitioner's detention, standing alone, may not violate substantive due process. See Torres, 995 F.3d at 699 (identifying the 21-months of pre-trial detention as "likely approaching the outer bounds of due process."). However, Petitioner has offered ample evidence that this duration is excessive in relation to its regulatory purpose, in that any danger or flight risk he presents can be mitigated by alternatives to detention. The undersigned also finds that detention has become excessive in relation to its purpose given the reportedly harsh conditions of confinement and Petitioner's failing health.

**B. Government Contribution to Delay**

Relevant to this analysis is whether the government is responsible for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). The record does not indicate that the government is responsible for any delays contributing to Petitioner's lengthy detention. The matter is making its way through the appellate process which, though lengthy, does not appear to have been delayed by any specific action by the government.

**C. Evidence of Flight Risk and Danger**

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086.

At a bond hearing in September 2024, an IJ determined that Petitioner posed a danger and flight risk. ECF No. 11-1. The record does not contain the IJ's full decision, so the undersigned is unable to assess the IJ's reasoning. Based on the limited information in the record, it appears that Petitioner would pose some risk of flight. Petitioner returned to the United States after being removed and used a false name when apprehended. ECF No. 7-1 at 3. Presumably, the use of a false name was to evade further immigration or law enforcement action against him.

As to danger to the community, Petitioner's criminal history is dated. Petitioner has a 1993 conviction for the sale or transport of heroin, a 1998 DUI conviction, and a 2012 conviction for driving with a suspended license. ECF No. 7-1 at 3. The record does not contain evidence of rehabilitation, though the undersigned considers that the last conviction – for a misdemeanor driving offense – occurred nearly 14 years ago. Petitioner is now 61 years old and in poor health, posing only minimal danger to the community.

**D. Alternatives to Detention**

Relevant to assessing dangerousness to society is whether the government's interest in protecting the community could be protected through alternatives to detention that are less restrictive. Doe, 732 F. Supp 3d at 1080.

To the extent Petitioner poses a cognizable risk of flight, there are routine and obvious conditions that ICE could impose, including check-ins with ICE officials and electronic monitoring. The Court in Doe v. Becerra II noted the success of such conditions in mitigating risk of flight: "In a report on the Intensive Supervision Appearance Program, the Department of Homeland Security recently stated that the 'vast majority' of program participants over five years 'were compliant with the requirements of the program. The success rate for single adults ...

ranged from 72.7 percent to 88.9 percent.' ICE data for 2023 shows that participants in these programs appeared at 99.1% of hearings, including 93.6% of final hearings.And these statistics are not disaggregated by the type of monitoring." Doe v. Becerra II, 732 F. Supp 3d at 1088 (citations omitted). "Even assuming Mr. [Juarez Ruiz] poses a flight risk as the immigration judge found (which Mr. [Juarez Ruiz] disputes), ICE's statistics suggest that the risk can be significantly mitigated through GPS tracking or other alternatives." *Id.* Moreover, "studies from the criminal context suggesting that electronic monitoring can reduce recidivism" and suggest that "someone who knows their location is being monitored will face at least some additional incentive not to engage in criminal conduct." *Id.* Given Petitioner's circumstances, the available alternatives to detention weigh in favor of release.

**E. Conditions of Confinement**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'").

> The conditions of confinement [] inform whether the duration of detention has become punitive. Thirty months in an overcrowded dormitory with limited access to medical care, legal assistance, and communications to the outside world is different, for constitutional purposes, from the same amount of time spent in more comfortable accommodations with greater access to services.

Doe v. Becerra II, 732 F. Supp. 3d at 1080

Petitioner suffers from various health conditions including diabetes, vision loss, difficulty walking, and a history of heart attacks. ECF No. 9 at 1; ECF No. 16 at 2. Without providing specific details, he alleges medical neglect during his two-plus years of detention. ECF No. 9 at 1. The undersigned has previously noted the reported medical neglect at the facility where Petitioner is detained. See Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (noting investigation and report by Disability Rights California finding that California City fails to provide necessary medical and mental health care and fails to other meet basic needs), report and recommendation adopted, No.

1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026).[5] Respondents have not rebutted any of Petitioner's allegations about medical neglect and the risks posed by his ongoing detention. Nor have Respondents identified any process that they follow for determining whether an individual with Petitioner's serious medical issues should be released in order to safeguard his health. The length of Petitioner's detention, combined with deficiencies in medical care, thus further suggest that his ongoing detention is excessive in relation to its purpose.

**F. Conclusion as to Substantive Due Process Analysis**

On balance, the undersigned finds that Petitioner has established that his detention is excessive in relation to its regulatory purpose**.** Petitioner has spent over two years confined in "abysmal" and "harsh" conditions while in a medically vulnerable state. Any risk of danger or flight can be mitigated by standard post-release monitoring. Accordingly, the undersigned finds that Petitioner's detention has become punitive and recommends that the petition be granted on Count Four.[6]

## III. Remedy

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The undersigned finds that appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate flight risk, and to

---

[5] Conditions at California City have also been described as "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent," Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025), and those conditions may be "not only inherently harsh but also worse than the conditions […] in state prison." Doe v. Chestnut, 810 F. Supp. 3d at 1201 (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089).

[6] In the interests of judicial economy, the undersigned does not address Petitioner's challenge to the legal adequacy of the September 2024. bond hearing

some degree the risk of future criminal activity. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

**CONCLUSION**

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED on Count 4 (substantive due process) as follows:
   a. Respondents shall IMMEDIATELY RELEASE Petitioner Alejo Juarez Ruiz (A# 072-985-450) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions.
   b. Respondents may place Petitioner on standard conditions of supervision upon release.
2. The Clerk be directed to:
   a. Serve the **California City Detention Center** with a copy of this Order; and
   b. Enter judgment in Petitioner's favor and close the case.
3. Any order adopting these findings and recommendations include language that it does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of the order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties

have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 13, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE